IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| SHANNON ALLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:10-cv-0045 |
| ) | Judge Trauger |
| CUMBERLAND MEDICAL CENTER, INC., ) | |
| KANN INSTITUTE FOR MEDICAL ) | |
| CAREERS, INC. d/b/a MEDVANCE, and ) | |
| KIMC INVESTMENTS, L.P., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court are the Motions for Summary Judgment filed by defendants Kann Institute for Medical Careers, Inc. and KIMC Investments, L.P. (Docket No. 15) and by defendant Cumberland Medical Center, Inc. (Docket No. 18). For the reasons discussed below, the defendants' motions will be granted.

## FACTS

The plaintiff, Shannon Allen, was a medical lab technology student at the Cookeville, Tennessee campus of MedVance Institute, which is operated by defendants Kann Institute for Medical Careers, Inc. and KIMC Investments, L.P. (collectively, "MedVance").[1] MedVance's curriculum requires students to gain clinical experience via externships with area hospitals.

---

[1] Unless otherwise noted, the facts are drawn from the defendants' statements of facts (Docket Nos. 20, 28) and related exhibits. The court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

1

Allen was placed in an externship with defendant Cumberland Medical Center, Inc. ("Cumberland").

The externship began on April 20, 2009, and the plaintiff was not financially compensated for her work. In the course of her externship, the plaintiff worked with Jaxter Burnett, who was employed in Cumberland's blood bank.[2] The Complaint alleges that Burnett sexually harassed Allen by making unwanted sexual advances and by inappropriately touching her. On or around May 8, 2009,[3] the plaintiff reported the alleged harassment to Shirley Cole, MedVance's Campus Director, who relayed the complaints to Patty Bowman, the Director of Education. MedVance determined that, regardless of the outcome of the investigation, it would find a new externship for Allen. Bowman informed the plaintiff that it would take several weeks to complete that process.

Within a week, Cole and Bowman met with Cumberland's Laboratory Director, Carolyn Smith, and Director of Human Resources, Pat Whittenburg, to discuss the plaintiff's complaints. Cumberland assured MedVance that it would conduct an investigation and interview each lab employee who had worked with Burnett and Allen.

Burnett had worked at Cumberland since 1974, initially starting as a medical lab technician. In 2006, he was promoted to the position of senior blood bank technologist. Aside

---

[2] The plaintiff's Complaint refers to Jaxter Burnett as "John Baxter." This is apparently a typographical error.

[3] According to Cumberland's undisputed evidence, the plaintiff only actually worked with Burnett for five days – Monday, April 20 through Friday, April 24. On Monday, April 27 through Friday, May 1, Burnett was on vacation. On May 4-5, the plaintiff was absent due to a death in the family, and on May 6-7, the plaintiff was absent without calling in. Thus, May 1 was the last day that the plaintiff attended her externship.

2

from Allen's allegations, Burnett has never been accused of sexual harassment, and he has no record of disciplinary problems at Cumberland.

On May 29, 2009, Cole and Bowman again met with Whittenburg and Smith, who reported that their investigation had revealed nothing to corroborate Allen's allegations. Because no other employees had seen the offensive behavior or overheard any inappropriate remarks, Cumberland determined that it had no reason to take action against Burnett. At the meeting, Cumberland told MedVance that it would be willing to move Allen to a different site within the lab, so that she would not need to work directly with Burnett.

On June 12, 2009, MedVance secured a new externship for the plaintiff at University Medical Center. MedVance's clinical coordinator attempted to phone Allen several times and left several messages regarding the new externship, but Allen never returned the calls. On June 16, Bowman sent a letter to the plaintiff regarding the new externship, but, again, Allen did not contact MedVance. On June 24, MedVance dropped the plaintiff from the program for failure to complete an externship.

The next time the plaintiff contacted MedVance was January 11, 2010, when she told MedVance's Business Manager that she did not want to be dropped from the program. When Bowman responded by leaving Allen a phone message, Allen again failed to follow up. MedVance did not hear from Allen again until she filed this suit in Tennessee state court on March 31, 2010.

The plaintiff asserts claims for sexual discrimination and retaliation under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-301 *et seq.*, 4-21-401 *et seq.* Because

3

the Complaint references federal law (see Docket No. 1, Ex. 1 ¶ 64), the plaintiff also appears to be suing under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The plaintiff alleges that the sexual harassment by Burnett created a hostile work environment and that the defendants "knowingly permitted conditions of discrimination." (Docket No. 1, Ex. 1 ¶ 38.) She further alleges that the defendants failed to properly supervise their employees and that Cumberland negligently hired Burnett. MedVance removed the case to this court on federal question grounds.

## ANALYSIS

MedVance has filed a Motion to Dismiss or, Alternatively, for Summary Judgment,[4] and Cumberland has filed a Motion to Dismiss and for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56.[5] The plaintiff has not responded to either motion.

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) requires the court to grant a motion for summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If a moving defendant shows that there is no

---

[4] The plaintiff filed a Notice of Voluntary Dismissal of her claims against MedVance (Docket No. 30) after MedVance filed its motion. But a plaintiff may only unilaterally dismiss a defendant *before* the defendant files an answer or a motion for summary judgment. Fed. R. Civ. P. 40(a)(1)(A)(i). Thus, the plaintiff's dismissal is ineffective, because it is not a "stipulation of dismissal signed by all parties who have appeared." *Id.* 40(a)(1)(A)(ii).

[5] Both defendants have attached evidence to their motions, and the court will treat both motions as motions for summary judgment. The plaintiff has had an opportunity to conduct discovery in response to the motions; in fact, she has received two extensions of time for that explicit purpose. (Docket Nos. 17, 26.)

4

genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan*, 578 F.3d at 374.

"'[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

A non-moving party's failure to respond to a motion "'indicates there is no opposition to the motion.'" *Johnson v. Jackson County Sheriff's Dep't*, No. 2:08-0033, 2009 U.S. Dist. LEXIS 33078, at *2 (M.D. Tenn. Apr. 17, 2009) (quoting M.D. Tenn. Local R. 7.01(b)). More specifically, failure to respond to a motion for summary judgment "'shall indicate that the asserted facts are not disputed for the purposes of summary judgment.'" *Id.* (quoting M.D. Tenn. Local R. 56.01(g)).

But the court will not grant the defendants' Motions for Summary Judgment solely on the ground that the plaintiff did not respond. *Id.* (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d

5

612, 614 (6th Cir. 1998)). The Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure he has discharged [his initial] burden. . . . The federal rules require the party filing a motion for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact.

*Stough*, 138 F.3d at 614 (quotation marks omitted) (second alteration in original); *see also Miller v. Shore Fin. Servs., Inc.*, 141 Fed. Appx. 417, 419 (6th Cir. 2005). Consequently, the court must examine the defendants' evidence to determine whether they have sufficiently met their burden.

## II. Applicability of Title VII and the THRA

The defendants' main argument is that, because Allen was not an employee of either Cumberland or MedVance, Title VII and the provisions of the THRA regarding workplace harassment do not apply. (Docket No. 15 at 5-9; Docket No. 19 at 4-5.)

Title VII makes it illegal for an "employer" to "discharge any individual, or otherwise to discriminate against any individual with respect to his . . . terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The THRA contains a nearly identically worded provision. Tenn. Code Ann. § 4-21-401(a)(1). Title VII further prohibits retaliation by employers: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge . . . under this title." 42 U.S.C. § 2000e-3(a). Again, the THRA contains an analogous provision. Tenn.

6

Code Ann. § 4-21-301(1) (making it illegal to "[r]etaliate . . . against a person because such person has opposed a practice declared discriminatory by this chapter").

Given the similarity of the two statutes, when applying the THRA, courts borrow the Title VII framework developed by federal courts. This is because the Tennessee legislature "intended for the THRA to be coextensive with federal law." *Allen v. McPhee*, 240 S.W.3d 803, 812 (Tenn. 2007) (borrowing Title VII framework in a hostile environment sexual harassment case) (quotation marks omitted); *see also Johnson v. United Parcel Serv.*, No. 03-5620, 2004 U.S. App. LEXIS 23795, at *7 n.2 (6th Cir. Nov. 10, 2004) ("The prohibitions on discrimination in the Tennessee Human Rights Act are generally coterminous with those under Title VII . . . ."); Tenn. Code Ann. § 4-21-101(a)(1) (noting that one purpose of the THRA is to "[p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964").

"Notwithstanding [Title VII's] statutory language that refers to 'individuals,' courts have limited Title VII's protections to individuals who are 'employees.'" *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 157 (6th Cir. 2004); *see also Lemmings v. FedEx Ground Package Sys.*, 492 F. Supp. 2d 880, 887 (W.D. Tenn. 2007) ("Title VII protections apply only to a defendant employer's direct or indirect employees."). Although the THRA does not use the term "employee," its provisions do speak of "employers," and the Tennessee Supreme Court has looked to Title VII's definition of "employee" to define the reach of the THRA. *Bredesen v. Tenn. Judicial Selection Comm'n*, 214 S.W.3d 419, 430, 432 (Tenn. 2007) (applying common-law agency factors and finding that "state court judges . . . are not employees for purposes of the THRA").

7

Allen, then, cannot recover if she was not an employee of either MedVance or Cumberland. The Second Circuit has addressed an essentially identical factual scenario, and it held that the plaintiff student was not an employee under Title VII. In *O'Connor v. Davis*, 126 F.3d 112 (2d Cir. 1997), the plaintiff was a college student in a program that required 200 hours of field work, and she was placed in an internship at a hospital for the mentally disabled. *Id.* at 113. A psychiatrist at the hospital allegedly sexually harassed the plaintiff, and the plaintiff filed a Title VII claim against the school and the hospital. *Id.* The court found that the claim was not viable because the plaintiff was not an "employee." *Id.* at 116.

The court noted that, typically, cases addressing the definition of "employee" focus on common-law agency principals to determine whether a plaintiff is an employee or an independent contractor. *Id.* at 115. But in *O'Connor*, the "antecedent question" was "whether [the plaintiff] was hired by [the hospital] for any purpose." *Id.* "[A] prerequisite to considering whether an individual is one or the other under common-law agency principles is that the individual have been hired in the first instance." *Id.*

The court explained:

> Where no financial benefit is obtained by the purported employee from the employer, no "plausible" employment relationship of any sort can be said to exist[,] because although "compensation by the putative employer to the putative employee in exchange for his services is not a sufficient condition, . . . it is an essential condition to the existence of an employer-employee relationship."

*Id.* at 115-16 (quoting *Graves v. Women's Prof'l Rodeo Ass'n*, 907 F.2d 71, 74 (8th Cir. 1990)).

8

In "the absence of either direct or indirect economic remuneration,"[6] a person is not an employee, and Title VII does not apply.[7] *Id.* at 116.

Here, the undisputed evidence shows that Allen never received payment or any other type of economic remuneration from either Cumberland or MedVance. Instead, just like the plaintiff in *O'Connor*, she was placed in the unpaid externship because it was required by her school's curriculum. This means that Allen was not an employee, and that Title VII and the employer discrimination provisions of the THRA do not apply. Accordingly, the court will dismiss the plaintiff's Title VII and THRA claims.[8]

### III. Negligence

Although they are not pleaded as separate counts, the plaintiff also claims that Cumberland negligently hired Burnett and that all of the defendants were negligent in

---

[6] Such remuneration could include "salary or other wages; employee benefits, such as health insurance; vacation; [or] sick pay." *York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 126 (2d Cir. 2002) (citing *O'Connor*, 126 F.3d at 116).

[7] *O'Connor* has been cited favorably by both the Sixth Circuit and the Tennessee Supreme Court. *Demski v. United States Dep't of Labor*, 419 F.3d 488, 492 (6th Cir. 2005); *Bredesen*, 214 S.W. 3d at 431; *see also Bryson v. Middlefield Volunteer Fire Dep't, Inc.*, 546 F. Supp. 2d 527, 530 (N.D. Ohio 2008) ("[T]he Court finds compensation analysis is an antecedent inquiry that must be examined prior to application of the economic realities or common law agency tests.")

[8] MedVance seeks attorney's fees under 42 U.S.C. § 2000e-5(k), which allows the court, "in its discretion," to award fees to the prevailing party in a Title VII action. A defendant should only receive attorney's fees, however, if the plaintiff's claim "was frivolous, unreasonable, or groundless," or if the plaintiff "brought or continued such a claim in bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). Although the plaintiff's Title VII claims are ultimately not viable, the court does not find that her claims are so unreasonable or frivolous as to merit an attorney's fees award. *See Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986) ("An award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct.").

9

supervising the externship program. (*See* Docket No. 1, Ex. 1 ¶ 48.) Even if these are treated as separate claims, however, they are not meritorious.

For either negligence claim, the plaintiff must show that the harm she suffered was foreseeable by the defendants. *See Smith v. Keyport Self-Storage*, No. W1998-00810-COA-R3-CV, 2000 Tenn. App. LEXIS 301, at *12-14 (Tenn. Ct. App. May 5, 2000); *Gates v. McQuiddy Office Prods.*, No. 02A01-9410-CV-00240, 1995 Tenn. App. LEXIS 715, at *2-3 (Tenn. Ct. App. Nov. 2, 1995). But the defendants' undisputed evidence shows that Burnett, who had worked at Cumberland for 35 years before Allen began her externship, had never previously faced allegations of misconduct, sexual or otherwise. Until Allen complained, nothing indicated that Burnett might commit the alleged misconduct. Furthermore, once the plaintiff complained to MedVance about the alleged harassment, Cumberland promptly investigated and offered to move Allen to a different part of the lab, and MedVance promptly secured an alternative externship for Allen. There is no evidence suggesting that the defendants failed to reasonably respond to the plaintiff's allegations.

Because the plaintiff has not offered any evidence of her own, she has not met her burden of "set[ting] forth specific facts showing that there is a genuine issue for trial" regarding the alleged negligence. *See Moldowan*, 578 F.3d at 374. Accordingly, the court will dismiss these claims.

## **CONCLUSION**

For all of the reasons discussed above, the court will grant the defendants' Motions for Summary Judgment, and the plaintiff's Complaint will be dismissed.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge